# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CYRIL B. KORTE**, **JANE E. KORTE**,
and **KORTE & LUITJOHAN
CONTRACTORS, INC.**,
     Plaintiffs,

v.             **CASE NO. 3:12-CV-01072-MJR-PMF**

**UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES**; **KATHLEEN SEBELIUS**,
in her official capacity as the Secretary of
the United States Department of Health and
Human Services; **UNITED STATES
DEPARTMENT OF THE TREASURY**;
**TIMOTHY F. GEITHNER**, in his official
capacity as the Secretary of the United States
Department of the Treasury; **UNITED
STATES DEPARTMENT OF LABOR**;
and **HILDA L. SOLIS**, in her official
capacity as Secretary of the United States
Department of Labor,

     Defendants.
_____/

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**<u>TABLE OF CONTENTS</u>**

**Page**

INTRODUCTION ............................................................................................... 1

UNDISPUTED MATERIAL FACTS ................................................................. 2

THE REGULATIONS BEING CHALLENGED .............................................. 4

ARGUMENT ...................................................................................................... 6

    I. SUMMARY JUDGMENT STANDARD ............................................. 6

    II. AS A MATTER OF LAW, SUMMARY JUDGMENT SHOULD BE
       GRANTED ON PLAINTIFFS' RFRA CLAIM (COUNT I). ............. 6

       A.  The Mandate Substantially Burdens Plaintiffs' Exercise Of Religion ....... 7

       B.  Anticipated Arguments By Defendants ................................... 10

       C.  RFRA Imposes Strict Scrutiny ................................................ 11

       D.  Defendants Cannot Demonstrate A Compelling Governmental
          Interest ................................................................................. 12

       E.  The Mandate Is Not The Least Restrictive Means .................... 15

    III. AS A MATTER OF LAW, SUMMARY JUDGMENT SHOULD BE
        GRANTED ON PLAINTIFFS' FREE EXERCISE CLAIM (COUNT II) ..................... 16

       A. The Mandate Is Not Neutral ..................................................... 17

       B. The Mandate Is Not Generally Applicable .............................. 18

CONCLUSION ................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                **Page(s)**

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983)...................................................................................... 15

*Braunfeld v. Brown*,
   366 U.S. 599 (1961)...................................................................................10-11

*Brown v. Entm't Merchs. Ass'n*,
   131 S. Ct. 2729 (2011)............................................................................ 12, 15

*Church of the Lukumi Babalu Aye v. City of Hialeah*,
   508 U.S. 520 (1993)........................................................................11, 14, 17-20

*City of Boerne v. Flores*,
   521 U.S. 507 (1997)...................................................................................... 12

*Citizens United v. FEC*,
   130 S. Ct. 876 (2010)................................................................................... 10

*Commack Self-Service Kosher Meats, Inc. v. Hooker*,
   800 F. Supp. 2d 405 (E.D. N.Y. 2011) ......................................................... 10

*Consol. Edison Co.  v. Public Serv. Comm'n*,
   447 U.S. 530 (1980)...................................................................................... 12

*EEOC v. Townley Eng'g & Mfg. Co.*,
   859 F.2d 610 (9th Cir. 1988) ....................................................................10-11

*Emp't Div. v. Smith*,
   494 U.S. 872 (1990)................................................................................16, 18-19

*Fraternal Order of Police v. City of Newark*,
   170 F.3d 359 (3d Cir. 1999)........................................................................ 19

*Frazee v. Emp't Sec. Dep't*,
   489 U.S. 829 (1989)...................................................................................... 18

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006)...................................................................................11-14

*McClure v. Sports & Health Club Inc.*,
   370 N.W.2d 844 (Minn. 1985)..................................................................... 11

*McDaniel v. Paty*,
   435 U.S. 618 (1978) ................................................................................ 17

*Monell v. N.Y. City of Dep't of Social Servs.*,
   436 U.S. 658 (1978) ................................................................................ 10

*Morr-Fitz, Inc. v. Blagojevich*,
   231 Ill. 2d 474 (2008) ............................................................................. 11

*Newland v. Sebelius*,
   2012 U.S. Dist. LEXIS 104835 (D. Colo. July 27, 2012) ....................... 1, 13-14, 16

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
   132 S. Ct. 2566 (2012) .............................................................................. 4

*O'Brien v. U.S. Dep't of Health & Humans Servs.*,
   2012 U.S. Dist. LEXIS 140097 (E.D. Mo. Sept. 28, 2012)
   *on appeal*, Case No. 12-3357 (8th Cir.) ................................................... 6

*O'Bryan v. Bureau of Prisons*,
   349 F.3d 399 (7th Cir. 2003) ..................................................................... 6

*Primera Iglesia Bautista Hispana v. Broward Cnty.*,
   450 F.3d 1295 (11th Cir. 2006) ............................................................... 10

*Sherbert v. Verner*,
   374 U.S. 398 (1963) ............................................................................. 6-7, 12

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) .............................................................. 10-11

*Thomas v. Review Bd.*,
   450 U.S. 707 (1981) ................................................................................... 7

*United States v. Israel*,
   317 F.3d 768 (7th Cir. 2003) ..................................................................... 7

*United States v. Lee*,
   455 U.S. 252 (1982) ................................................................................. 11

*United States v. Playboy Entm't Grp., Inc.*,
   529 U.S. 803 (2000) ................................................................................. 16

*United States v. Robel*,
   389 U.S. 258 (1967) ................................................................................. 16

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972).........................................................................................6-7, 13, 15

**STATUTES**

1 U.S.C. § 1 .......................................................................................................... 10

26 U.S.C. § 4980D ................................................................................................. 8

26 U.S.C. § 4980D(b)(1) ....................................................................................... 5

26 U.S.C. § 4980H ................................................................................................. 8

26 U.S.C. § 4980H(a) ............................................................................................ 5

26 U.S.C. § 4980H(c)(1) ........................................................................................ 5

26 U.S.C. § 4980H(c)(2) ...................................................................................... 13

26 U.S.C. § 4980H(c)(2)(A) .................................................................................. 5

26 U.S.C. § 5000A(d)(2)(A)(i) ........................................................................ 5, 18

26 U.S.C. § 5000A(d)(2)(A)(ii) ....................................................................... 5, 18

26 U.S.C. § 5000A(d)(2)(B)(ii) ....................................................................... 5, 18

29 U.S.C. § 1132(a) ............................................................................................... 8

42 U.S.C. § 300gg-13(a)(4) ................................................................................... 4

42 U.S.C. § 18011 ................................................................................................. 5

42 U.S.C. § 2000bb ............................................................................................... 6

42 U.S.C. § 2000bb(b) ........................................................................................... 6

42 U.S.C. § 2000bb-1(a) ....................................................................................... 7

42 U.S.C. § 2000bb-1(b) .................................................................................. 7, 12

215 Ill. Comp. Stat. § 5/356z.4 ............................................................................ 3

745 Ill. Comp. Stat. § 70/1 .................................................................................... 3

745 Ill. Comp. Stat. § 70/2 .................................................................................... 3

745 Ill. Comp. Stat. § 70/3(a) ............................................................................... 3

745 Ill. Comp. Stat. § 70/3(e) ............................................................................... 3

745 Ill. Comp. Stat. § 70/3(f) ............................................................................... 3

745 Ill. Comp. Stat. § 70/11.2 .............................................................................. 3

**REGULATIONS**

26 C.F.R. § 54.9815-1251T (Nov. 17, 2010) ........................................................ 5

29 C.F.R. § 2590.715-1251 (Nov. 17, 2010) ....................................................... 5

45 C.F.R. § 147.130 (Aug. 3, 2011) ..................................................................... 4

45 C.F.R. § 147.130(a)(iv)(B) (Aug. 3, 2011) ................................................. 5, 18

45 C.F.R. § 147.140 (Nov. 17, 2010) ................................................................... 5

75 Fed. Reg. 41726 (July 19, 2010) ................................................................. 5, 14

76 Fed. Reg. 46621 (Aug. 3, 2011) ............................................... 4-5, 8-9, 17

77 Fed. Reg. 8725 (Feb. 15, 2012) ............................................... 4-5, 9, 13, 17

77 Fed. Reg. 16501 (March 21, 2012) .................................................................. 9

**RULES**

Fed. R. Civ. P. 56 ................................................................................................. 6

**OTHER AUTHORITIES**

DEP'T OF HEALTH & HUMAN SERVS., GUIDANCE ON THE TEMPORARY ENFORCEMENT
    SAFE HARBOR (2012), *available a*t http://cciio.cms.gov/resources/files/
    Files2/02102012/20120210-Preventive-Services-Bulletin.pdf................................... 9

GUTTMACHER INST., FACT SHEET: CONTRACEPTIVE USE IN THE UNITED STATES
    (2012), http://www.guttmacher.org/pubs/fb_contr_use.html ........................... 14

Health Res. & Servs.  Admin., *Women's Preventive Services:  Required Health Plan Coverage Guidelines*, *available at* http://www.hrsa.gov/womensguidelines/ .......................................................................................4

Press Release, *A Statement by U.S. Department of Health & Human Services Secretary Kathleen Sebelius* (2012), *available at* http://www.hhs.gov/news/press/2012pres/01/20120120a.html .............................................9, 14

Press Release, *Health Care Law Gives Women Control Over Their Care, Offers Free Preventive Services To 47 Million Women* (2012), *available at* hhtp://www.hhs.gov/news/press/2012pres/07/20120731a.html ...........................10

STAMAN & SHIMABUKURO, CONG. RESEARCH SERV., RL 7-5700, ENFORCEMENT OF THE PREVENTATIVE HEALTH CARE SERVICES REQUIREMENTS OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT (2012) ................................................................................................................5

STATISTICS ABOUT BUSINESS SIZE (INCLUDING SMALL BUSINESS) FROM THE U.S. CENSUS BUREAU, U.S. CENSUS BUREAU, http://www.census.gov/econ/smallbus.html ..............................................................13

## INTRODUCTION

Defendants have promulgated and are implementing regulations that require employers to include in their employee health benefit plans coverage for contraceptives, including abortion-inducing drugs, sterilization, and related patient counseling and education. (Hereafter "Mandate.") Not complying with the Mandate subjects an employer to fines and penalties.

Plaintiffs move this court for summary judgment on Count I of their complaint, which claims the Mandate violates Plaintiffs' rights under the Religious Freedom Restoration Act, and on Count II of their complaint, which claims the Mandate violates Plaintiffs' rights under the Free Exercise Clause of the United States Constitution. Plaintiffs preserve all other issues and claims in their complaint, including those that comprise Counts III, IV, and V, and a determination of attorneys' fees and costs, for further proceedings.

The Mandate, which directly applies to Plaintiffs on January 1, 2013, when their employee health plan is up for renewal, makes Plaintiffs face a stark choice: abandon their beliefs to stay in business, or abandon their business to stay true to their beliefs. That is a choice no government bound by the First Amendment and the Religious Freedom Restoration Act (hereafter "RFRA") may lawfully impose upon them. This is especially true because the choice Defendants impose on Plaintiffs is a choice the government has decided *not* to impose on thousands of other employers who share Plaintiffs' views, and tens of thousands more employers (of 100 million employees) who may or may not share Plaintiffs' views. Such massive under-inclusiveness in rules purporting to further what appears to be a remarkably *non*-compelling "compelling interest" has already led the first court to consider this issue to enjoin the same regulations challenged here. *See Newland v. Sebelius*, 2012 U.S. Dist. LEXIS 104835 (D. Colo. July 27, 2012).

1

## UNDISPUTED MATERIAL FACTS

Plaintiff Korte & Luitjohan Contractors, Inc. (hereafter "Korte & Luitjohan") is a family owned, full-service construction contractor serving Central and Southern Illinois for over fifty years.  Plaintiffs Cyril and Jane Korte own a controlling interest in Korte & Luitjohan, and they set the policies governing the conduct of all phases of the company.  Cyril and Jane Korte hold to the teachings, values, and mission of the Catholic Church, including the Church's teaching regarding the sanctity of human life from conception to natural death.  They believe that actions intended to terminate an innocent human life by abortion are gravely sinful.  They also adhere to the Catholic Church's teaching regarding the immorality of artificial means of contraception and sterilization.  Cyril and Jane Korte seek to manage and operate Korte & Luitjohan in a way that reflects their Catholic faith.  (Ex. A, C. Korte Decl. at ¶¶ 1-5; Ex. B, J. Korte Decl. at ¶¶ 1-5.)

Korte & Luitjohan currently has about ninety full-time employees.  About seventy of those employees belong to unions and about twenty of those employees are non-union.  Korte & Luitjohan provides a group health insurance plan only for non-union employees.  Union employees are covered by separate health insurance through their respective unions over which Plaintiffs have no control.  Like other non-cash benefits provided by Korte & Luitjohan, Cyril and Jane Korte consider the provision of employee health insurance an integral component of furthering the company's mission and values.  Defendants' Mandate, which is the subject of this action, requires group health plans, such as the plan provided by Korte & Luitjohan for its non-union employees, to include coverage, without cost sharing, for contraceptives, including abortion-inducing drugs, sterilization, and related patient education and counseling.  The Mandate went into effect on August 1, 2012, and applies to Korte & Luitjohan when its group health plan comes up for renewal on January 1, 2013.  Korte & Luitjohan is not exempt from the

Mandate.  (Ex. A, C. Korte Decl. at ¶¶ 6-10; Ex. B, J. Korte Decl. at ¶¶ 6-10.)

As was discovered in or about August 2012, Korte & Luitjohan's current group health plan includes coverage for contraceptives, sterilization, and abortion, which is an error that is contrary to what Plaintiffs want based on their religious beliefs and contrary to the company's ethical guidelines.  The company is investigating ways to obtain a group plan that complies with the Kortes' Catholic faith and the company's ethical guidelines and will not cause them to arrange for, pay for, or otherwise support employee health plan coverage for contraceptives, sterilization, abortion, or related education and counseling.  It takes about sixty days to explore whatever options, if any, are available to the company to have a new health plan in place by January 1, 2013.  Thus, Plaintiffs are in need of immediate relief from the Mandate to allow time to obtain group health coverage by January 1, 2013, that complies with Cyril and Jane Kortes' religious beliefs and with the company's ethical guidelines and to prevent a coverage lapse.[1]/  If the company fails to comply with the Mandate or drops its employee group health coverage, then the company could be subjected to annual fines and/or penalties.  (Ex. A, C. Korte Decl. at ¶¶ 11-19; Ex. B, J. Korte Decl. at ¶¶ 11-19.)

In sum, the Mandate requires Plaintiffs to choose between (a) complying with the Mandate and violating their religious beliefs and (b) not complying with the Mandate and having to pay annual fines and penalties in order to conduct business consistent with their religious

---

[1]/ The State of Illinois requires coverage for outpatient contraceptive services and drugs in individual and group health insurance policies.  215 Ill. Comp. Stat. § 5/356z.4.  Yet, the Illinois Health Care Right of Conscience Act, 745 Ill. Comp. Stat. § 70/1, *et seq.*, provides "health care payers," 745 Ill. Comp. Stat. § 70/3(f), such as Plaintiffs, with an exemption from having to pay for, or having to arrange for the payment of, any health care services, including "family planning, counseling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures; medication; or surgery or other care or treatment," 745 Ill. Comp. Stat. § 70/3(a), that violates the health care payer's conscience as documented in its ethical guidelines or the like, 745 Ill. Comp. Stat. §§ 70/2, 70/3(e), 70/11.2.

3

beliefs.  (Ex. A, C. Korte Decl. at ¶ 17; Ex. B, J. Korte Decl. at ¶ 17.)  Plaintiffs require relief from this court so they do not have to make that choice.

### THE REGULATIONS BEING CHALLENGED

On March 23, 2010, the Affordable Care Act (hereafter "ACA") became law.[2]/  The ACA requires group health plans to provide no-cost coverage for the preventative care and screening of women in accordance with guidelines created by the Health Resources and Services Administration (hereafter "HRSA").   42 U.S.C.  § 300gg-13(a)(4).   The HRSA guidelines include, among other things, "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity."   *Women's Preventive Services: Required Health Plan Coverage Guidelines, Health Res. & Servs. Admin.*, http://www.hrsa.gov/womensguidelines/ (last visited Aug. 21, 2012).

On August 1, 2011, Defendants promulgated an interim final rule ("the Mandate"), requiring all "group health plan[s] and . . . health insurance issuer[s] offering group or individual health insurance coverage" to provide coverage for all FDA-approved contraceptive methods and sterilization procedures as well as patient education and counseling about those services.  76 Fed. Reg. 46621, 46622 (Aug. 3, 2011); 45 C.F.R. § 147.130 (2011).  This interim rule, along with the religious employer exemption described below, was adopted as final, "without change," on or about February 15, 2012.  77 Fed. Reg. 8725, 8729 (Feb. 15, 2012).

---

[2]/ In *Nat'l Fed'n of Indep. Bus. v. Sebelius*,  132 S. Ct. 2566 (2012), the Court upheld the so-called "individual mandate" of the ACA under the Constitution's taxing power.  In so doing, the Court did *not* rule on the constitutionality of the Mandate challenged herein.  In fact, as Justice Ginsburg observed, "A mandate to purchase a particular product would be unconstitutional if, for example, the edict impermissibly abridged the freedom of speech, interfered with the free exercise of religion, or infringed on a liberty interest protected by the Due Process Clause."  *Id*. at 2624 (Ginsburg, J., concurring in part, dissenting in part).

Not all employers are required to comply with the Mandate. "Grandfathered" health plans, that is, plans in existence on March 23, 2010, and that have not undergone any of a defined set of changes,[3]/ are exempt from compliance with the Mandate. *See* 75 Fed. Reg. 41726, 41731 (July 19, 2010).[4]/ Defendant HHS estimates that "98 million individuals will be enrolled in grandfathered group health plans in 2013." *Id.* at 41732. Also exempted from the Mandate are non-profit "religious employers," as defined at 45 C.F.R. § 147.130(a)(iv)(B). 76 Fed. Reg. 46621, 46626 (Aug. 3, 2011); 77 Fed. Reg. 8725 (Feb. 15, 2012). In addition, employers with fewer than fifty full-time employees have no obligation to provide health insurance for their employees under the ACA and do not have to comply with the Mandate. 26 U.S.C. § 4980H(c)(2)(A). Finally, under the ACA, individuals are exempt from the requirement to obtain health insurance if they are members of a "recognized religious sect or division" that conscientiously objects to acceptance of public or private insurance funds or are members of a "health care sharing ministry." 26 U.S.C. §§ 5000A(d)(2)(A)(i), (ii), (B)(ii).

Non-exempt employers who fail to provide an employee health insurance plan will be exposed to annual fines of roughly $2,000 per full-time employee. *See* 26 U.S.C. §§ 4980H(a), (c)(1). Additionally, failure to provide certain required coverage may be subject to an assessment of $100 a day per employee. *See* 26 U.S.C. § 4980D(b)(1); *see also* Staman & Shimabukuro, Cong. Research Serv., RL 7-5700, Enforcement of the Preventative Health Care Services Requirements of the Patient Protection and Affordable Care Act (2012) (asserting this assessment applies to employers who violate the "preventive care" provision of the ACA).

---

[3]/ *See* 26 C.F.R. § 54.9815-1251T (2010); 29 C.F.R. § 2590.715-1251 (2010); 45 C.F.R. § 147.140 (2010).

[4]/ *See* 42 U.S.C. § 18011 (2010); 76 Fed. Reg. 46621, 46623 (Aug. 3, 2011).

In sum, Defendants have written into the challenged regulations categorical exemptions that exclude—literally—upwards of 100 million Americans from "preventative services" coverage.  Given such massive under-inclusiveness, Plaintiffs' entitlement to partial summary judgment is clear.

## ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD.

Federal Rule of Civil Procedure 56 permits this court to award Plaintiffs partial summary judgment.  As Rule 56 explains, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Based on this standard, Plaintiffs are deserving of a grant of summary judgment on Count I (RFRA) and Count II (Free Exercise Clause) of their complaint.[5]/

### II.   AS A MATTER OF LAW, SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFFS' RFRA CLAIM (COUNT I).

The Mandate violates Plaintiffs' rights secured by the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq*.  The Act has the following two purposes:

> (1)   to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and

> (2)   to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

42 U.S.C. § 2000bb(b); *O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 401 (7th Cir. 2003) ("RFRA governs the activities of federal officers and agencies.").

---

[5]/ The district court in *O'Brien v. U.S. Dep't of Health & Human Servs.,* 2012 U.S. Dist. LEXIS 140097 (E.D. Mo. Sept. 28, 2012), recently dismissed claims similar to those raised by Plaintiffs here.  The O*'Brien* decision, which is non-binding on this court, is on appeal.  Case No. 12-3357 (8th Cir.).

Under RFRA, the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."  42 U.S.C. § 2000bb-1(a). The only time the federal government may substantially burden a person's exercise of religion is if "it demonstrates that application of the burden *to the person* (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(b) (emphasis added).

**A.  The Mandate Substantially Burdens Plaintiffs' Exercise Of Religion**.

To trigger the protections afforded by RFRA, Plaintiffs must first show that a federal governmental policy or action substantially burdens their sincerely held religious beliefs.  *United States v. Israel*, 317 F.3d 768, 771 (7th Cir. 2003).  Once that showing has been made, the burden shifts to the government to show that it had a compelling interest that the policy or action protects by the least restrictive means available.  *Id.*

Several Supreme Court cases are illustrative of what a substantial burden involves in the freedom of religion context.  In *Sherbert v. Verner*, 374 U.S. 398 (1963), the Court held that a state's denial of unemployment benefits to a Seventh-Day Adventist employee, whose religious beliefs prohibited her from working on Sunday, substantially burdened her exercise of religion. The regulation "force[d] her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand." *Id*. at 404.  In *Thomas v. Review Bd*., 450 U.S. 707 (1981), the Court held a state's denial of unemployment compensation benefits to a Jehovah's Witness employee, whose religious beliefs prohibited him from participating in the production of armaments, substantially burdened his religious beliefs.  "[T]he employee was put to a choice between fidelity to religious belief or cessation of work."  *Id*. at 717.  In *Wisconsin v. Yoder*, 406

U.S. 205 (1972), the Court held that a state compulsory school-attendance law substantially burdened the religious exercise of Amish parents who refused to send their children to high school.  The Court found the burden "not only severe, but inescapable," requiring the parents "to perform acts undeniably at odds with fundamental tenets of their religious belief."  *Id.* at 218.

Plaintiffs face the same inescapable burden faced by the religious claimants in these cases.  In the wake of the Mandate, and beginning on January 1, 2013, Plaintiffs must either pay for a health plan that includes drugs and services to which they religiously object or suffer severe penalties.  They have no other options.  There is no way of avoiding this conflict.  Should Plaintiffs exclude contraceptive services in a health plan for Korte & Luitjohan employees, Korte & Luitjohan will face substantial penalties as set forth in 26 U.S.C. § 4980D, in addition to potential lawsuits by plan participants, plan beneficiaries, and the Secretary of Labor.  *See* 29 U.S.C. § 1132(a).  Should Plaintiffs drop health insurance for their employees altogether, Korte & Luitjohan will face substantial penalties as set forth in 26 U.S.C. § 4980H, in addition to losing good will with its employees and losing a competitive edge in the employment marketplace.  In short, owing to the Mandate, Plaintiffs cannot create a health plan for Korte & Luitjohan employees consistent with their religious beliefs and consistent with the company's ethical guidelines without incurring substantial penalties of some kind.

Defendants cannot deny that the Mandate implicates the religious beliefs and practices of numerous employers.  On the contrary, the Defendants themselves have expressly acknowledged the burden on religious beliefs presented by the challenged regulations.  Recognizing that paying for, providing, or subsidizing contraceptive services would conflict with "the religious beliefs of certain religious employers," Defendants have granted a wholesale exemption for a class of employers, i.e., churches and their auxiliaries, from complying with the Mandate. 76 Fed. Reg.

46621, 46623 (Aug. 3, 2011); 77 Fed. Reg. 8725 (Feb. 15, 2012).  In addition, the government has provided a temporary enforcement safe harbor for any employer, group health plan, or group health insurance issuer that fails to cover some or all recommended contraceptive services and that is sponsored by a *non-profit* organization that meets certain criteria.[6]/  During the time of this temporary safe harbor, Defendants are considering ways of "accommodating non-exempt, non-profit religious organizations' religious objections to covering contraceptive services [while] assuring that participants and beneficiaries covered under such organizations' plans receive contraceptive coverage without cost sharing."  77 Fed. Reg. 16501, 16503 (Mar. 21, 2012). Defendants are even considering whether "for-profit religious employers with [religious] objections should be considered as well." *Id.* at 16504.

Indeed, Defendant Sebelius herself has publicly acknowledged that the Mandate raises religious concerns.  In a January 20, 2012, press release announcing the finalization of the Mandate and the temporary safe harbor period for non-profit entities that object to contraceptive services, Sebelius opined that the temporary reprieve "strikes the appropriate balance between respecting religious freedom and increasing access to important preventative services."[7]/ Subsequently, in a July 31, 2012, press release, Sebelius stated that "[t]he Obama administration will continue to work with all employers to give them the flexibility and resources they need to

---

[6]/ DEP'T OF HEALTH & HUMAN SERVS., GUIDANCE ON THE TEMPORARY ENFORCEMENT SAFE HARBOR 3 (2012), *available at* http://cciio.cms.gov/resources/files/ Files2/02102012/20120210-Preventive-Services-Bulletin. pdf (last visited Aug. 22, 2012).

[7]/ Press Release, *A Statement by U.S. Department of Health & Human Services Secretary Kathleen Sebelius* (2012), *available at* http://www.hhs.gov/news/press/ 2012pres/01/20120120a.html (last visited Aug. 12, 2012).

implement the health care law in a way that protects women's health while making common-sense accommodations for values like religious liberty."[8]/

In short, Defendants cannot make a straight-faced argument in this litigation that the Mandate does *not* impose a substantial burden on the exercise of religious beliefs.

## B.    Anticipated Arguments By Defendants.

Plaintiffs anticipate that Defendants will incorrectly claim that Plaintiffs are not entitled to relief based on the status of Korte & Luitjohan as a corporation, the status of Cyril and Jane Korte as individuals, or the company's status as a for-profit employer.

Corporations are legal "persons" who enjoy constitutional and statutory rights.[9]/   Cases make clear that the First Amendment rights enjoyed by corporations include the right to the free exercise of religion.  *Braunfeld v. Brown*, 366 U.S. 599 (1961) (adjudicating, *inter alia*, free exercise claims of for-profit businesses); *Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) (adjudicating free exercise claim of for-profit pharmacy corporation); *Primera Iglesia Bautista Hispana v. Broward Cnty.*, 450 F.3d 1295 (11th Cir. 2006) ("corporations possess Fourteenth Amendment rights" including "the free exercise of religion."); *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610 (9th Cir. 1988) (for-profit corporation could assert owners' free exercise rights); *Commack Self-Service Kosher Meats, Inc. v. Hooker*, 800 F. Supp. 2d 405 (E.D. N.Y. 2011) (adjudicating corporation's free exercise challenge).

---

[8]/ Press Release, *Health Care Law Gives Women Control Over Their Care, Offers Free Preventive Services To 47 Million Women* (2012), *available at* http://www.hhs.gov/ news/press/2012pres/07/20120731a.html (last visited Aug. 21, 2012).

[9]/ *See Citizens United v. FEC*, 130 S. Ct. 876, 899 (2010) ("The Court has recognized that First Amendment protection extends to corporations."); *see also Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 687 (1978) ("by 1871, it was well understood that corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis"); 1 U.S.C. § 1 ("[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . 'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals").

Two State Supreme Courts, including the State of Illinois, have also recognized that for-profit corporations have free exercise rights deserving of protection.  *See Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474 (2008) (corporate pharmacy had standing to bring, *inter alia*, federal free exercise claim); *McClure v. Sports & Health Club, Inc.,* 370 N.W.2d 844, 850 (Minn. 1985) (Minn. 1985) (the "conclusory assertion that a corporation has no constitutional right to free exercise of religion is unsupported by any cited authority").

Also, the fact that Cyril and Jane Kortes' individual free exercise rights are burdened by the Mandate is beyond serious questioning.  *See Townley*, 859 F.2d 610 (recognizing that business owner's free exercise rights are impacted by burden on corporation); *Stormans*, 586 F.3d 1109 (corporation had standing to assert free exercise rights of owners); *Morr-Fitz*, 231 Ill. 2d 474 (plaintiffs were both corporations and individual owners).

Finally, there is no merit to any argument that one abandons the right to free exercise upon entering the commercial marketplace.  *See Braunfeld*, 366 U.S. 599 (adjudicating free exercise claims of retail store owners).  The case of *United States v. Lee*, 455 U.S. 252 (1982), is not to the contrary.  In *Lee*, while ultimately finding that a compelling governmental interest outweighed the free exercise rights of an Amish farmer and carpenter, the Supreme Court acknowledged that—even though he had entered the commercial marketplace—the social security regulations of which he complained were indeed a *burden on his free exercise rights.*

In short, none of these anticipated arguments are valid.

### C.  RFRA Imposes Strict Scrutiny.

RFRA requires application of the "strict scrutiny test."  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006).  This test, which requires "the most rigorous of scrutiny," *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546

(1993), "is the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). The government must demonstrate that the challenged law serves "a compelling governmental interest" *and* is the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b).

As described above, the strict scrutiny test imposed by RFRA must be conducted "through application of the challenged law '**to the person**'—the particular claimant whose sincere exercise of religion is being substantially burdened." *O Centro Espirita*, 546 U.S. at 430-31 (emphasis added). Indeed, in both *Sherbert* and *Yoder*, the Court "looked beyond broadly formulated interests justifying the general applicability of government mandates and scrutinized the asserted harm of granting specific exemptions to particular religious claimants." *Id*. at 431. It is therefore not enough for the government to describe a compelling interest in the abstract or in a categorical fashion; the government must demonstrate that the interest "would be adversely affected by granting an exemption" *to the religious claimant*. *Id*. In other words, in this case the government must demonstrate *that exempting Plaintiffs* from the Mandate is necessary to advance its compelling interest even while the same government willingly exempts thousands of other employers who employ nearly 100 million employees.

### D. Defendants Cannot Demonstrate A Compelling Governmental Interest.

Just last term, the Supreme Court described a compelling state interest as a "high degree of necessity," *Brown v. Entm't Merchs. Ass'n*, 131 S.Ct. 2729, 2741 (2011), noting that "[t]he State must specifically identify an 'actual problem' in need of solving, and the curtailment of free speech must be actually necessary to the solution." *Id*. at 2738 (citations omitted). The "[m]ere speculation of harm does not constitute a compelling state interest." *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 543 (1980). As such, the government's invocation of the

promotion of health and equality as compelling interests, without more, is insufficient to meet the demands of strict scrutiny.  While recognizing "the general interest in promoting public health and safety," the Supreme Court held in *O Centro Espirita* that "invocation of such general interests, standing alone, is not enough."  *O Centro Espirita,* 546 U.S. at 438.  The government must demonstrate "some substantial threat to public safety, peace, or order" in not exempting the claimant.  *Yoder*, 406 U.S. at 230.

Defendants have proffered two compelling governmental interests for the Mandate: public health and gender equity goals.  77 Fed. Reg. 8725, 8729 (Feb. 15, 2012).  What radically undermines the government's claims of compelling interests is the massive number of employees, millions in fact, whose health and equality are completely unaffected by the Mandate and therefore not served by the government's alleged interests.  *See Newland*, 2012 U.S. Dist. LEXIS 104835 at *23.  For example, Defendants cannot explain how their alleged interests can be compelling when employers with fewer than fifty employees[10]/ have no obligation to provide health insurance for their employees and thus no obligation to comply with the Mandate.[11]/  With respect to Plaintiffs, Defendants cannot sufficiently explain how there is a compelling interest in coercing Plaintiffs into violating their religious principles when businesses with fewer than fifty employees can avoid the Mandate entirely by not providing any insurance.

Defendants also cannot explain how these interests can be of the highest order when the Mandate does not apply to plans grandfathered under the ACA.  The government itself has estimated that "98 million individuals will be enrolled in grandfathered group health plans in

---

[10]/ More than 20 million individuals are employed by firms with fewer than 20 employees.  STATISTICS ABOUT BUSINESS SIZE (INCLUDING SMALL BUSINESS) FROM THE U.S. CENSUS BUREAU, U.S. CENSUS BUREAU, http://www.census.gov/econ/smallbus.html (last visited Aug. 3, 2012).

[11]/ Employers are not subject to penalties for not providing health insurance coverage if they have fewer than 50 full-time employees.  26 U.S.C. § 4980H(c)(2).

2013." 75 Fed. Reg. 41726, 41732 (July 19, 2010). When this figure is added to the number of employees of businesses with fewer than fifty employees, it is fair to say that well over 100 million employees are left untouched by the government's claim of compelling interests. "It is established in our strict scrutiny jurisprudence that a law cannot be regarded as protecting an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprohibited." *Lukumi*, 508 U.S. at 547 (citations and internal quotation marks omitted). Because there is little that is uniform about the Mandate, as demonstrated by the massive number of employees that are untouched by it, we do not have an instance here of "a need for uniformity [that] precludes the recognition of exceptions to generally applicable laws under RFRA." *O Centro Espirita*, 546 U.S. at 436.

The existence of these enormous loopholes in the Mandate led Judge Kane in *Newland v. Sebelius* to issue a preliminary injunction: the "massive" number of employees untouched by the Mandate "completely undermines any compelling interest in applying the preventive care coverage mandate to Plaintiffs." *Newland*, 2012 U.S. Dist. LEXIS 104835 at *23.

Moreover, the fact that contraceptive services are widely available throughout the country further undercuts the government's assertions that its interests are compelling. The government describes its asserted interests as though a vast majority of citizens forego contraception or that no one has ready access to it. But the facts simply do not support the government's cry of alarm as attested to by the statements of Defendants themselves as well as sources upon which the Defendants rely.[12]/ In fact, even if Defendants could show that the Mandate has the potential to

---

[12]/ *E.g.*, Guttmacher Inst., Fact Sheet: Contraceptive Use In The United States (2012), *available at* http://www.guttmacher.org/pubs/fb_contr_use.html (last visited Aug. 3, 2012) ("Nine in 10 employer-based insurance plans cover a full range of prescription contraceptives[. . . . ]"); Press Release, *A Statement by U.S. Department of Health and Human Services Secretary Kathleen Sebelius* (2012), *available at* http://www.hhs.gov/news/

*(Text of footnote continues on following page.)*

increase the availability of contraceptives to *some* degree, "the government does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown*, 131 S.Ct. at 2741, n.9.

In sum, Defendants cannot demonstrate a compelling interest in requiring Plaintiffs to comply with a mandate for their approximately twenty non-union employees that does not apply to the employers of over 100 million employees nationwide.   Defendants cannot show a "substantial threat to public safety, peace or order" should Plaintiffs be exempt from the Mandate. *Yoder*, 406 U.S. at 230.

### E. The Mandate Is Not The Least Restrictive Means.

The existence of a compelling interest in the abstract does not give Defendants *carte blanche* to promote that interest through any regulation of their choosing particularly where, as here, Defendants attempt at regulation runs up against what Defendants themselves recognize is the exercise of a fundamental right.   If the government "has open to it a less drastic way of satisfying its legitimate interests, it may not choose a [regulatory] scheme that broadly stifles the exercise of fundamental personal liberties." *Anderson v. Celebrezze*, 460 U.S. 780, 806 (1983).

Assuming *arguendo* that the interests proffered by Defendants are compelling, the Mandate is not the least restrictive means of furthering those interests.  If Defendants wish to further the interests of health and equality by means of free access to contraceptive services, Defendants could do so in a myriad of ways without coercing Plaintiffs, in violation of their religious exercise, into doing so.  For example, 1) provide these services to citizens itself; 2) reimburse citizens who pay to use contraceptives, allowing citizens to submit receipts to the

---

press/2012pres/01/20120120a.html (last visited Aug. 3, 2012) (noting that "contraceptive services are available at sites such as community health centers, public clinics, and hospitals with income-based support.").

government for payment; 3) offer tax deductions or credits for the purchase of contraceptive services, and 4) impose a mandate on pharmaceutical companies that manufacture contraceptives to provide such products through pharmacies, doctor's offices, and health clinics free of charge.

Each of these options would further Defendants' proffered compelling interests in a direct way that would not impose a substantial burden on persons such as Plaintiffs.  *See Newland*, 2012 U.S. Dist. LEXIS 104835 at *23-27 (rejecting government's claim that the Mandate furthers a compelling governmental interest through the least restrictive means).  Of the various and sundry ways the government could achieve its interests, it has chosen a path with clear and undeniable adverse consequences to employers with religious objections to contraceptive services, such as Plaintiffs.

Although Defendants may contend that any or all of these options would prove difficult to establish or operate, "least restrictive means" does not mean the most convenient way for the government.  Even if *the government* claims these or other options would not be as effective or efficient as the Mandate, "*a court* should not assume a plausible, less restrictive alternative would be ineffective."  *United States v. Playboy Entm't Grp., Inc*., 529 U.S. 803, 824 (2000) (emphasis added).  In fact, if a less restrictive alternative would serve the government's purpose, "the legislature must use that alternative." *Id.* at 813.  The asserted interests of health and equality "cannot be invoked as a talismanic incantation to support any [law]." *United States v. Robel,* 389 U.S. 258, 263 (1967).  Therefore, as a matter of law, Plaintiffs should be awarded summary judgment on their RFRA claim (Count I).

## II.   AS A MATTER OF LAW, SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFFS' FREE EXERCISE CLAIM (COUNT II).

The Mandate also operates to deny Plaintiffs their right to the free exercise of religion even under the analytical framework announced in *Emp't Div. v. Smith*, 494 U.S. 872 (1990).  "A

law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Lukumi*, 508 U.S. at 546. "Neutrality and general applicability are interrelated" and "failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Id*. at 531. Here, because the Mandate is not neutral or of general application, the demanding strict scrutiny applies.

### A. The Mandate Is Not Neutral.

Obviously, the government may not discriminate among classes of religious believers based on their status as institutions, organizations, or preferred denominations. *See, e.g., Lukumi*, 508 U.S. at 533; *McDaniel v. Paty*, 435 U.S. 618 (1978).

Using its "discretion," the government has exempted from the Mandate non-profit entities that have as their purpose the "inculcation of religious values," "primarily employs persons who share its religious tenets," and "primarily serves persons who share its religious tenets." 76 Fed. Reg. 46621, 46623 (Aug. 3, 2011); 77 Fed. Reg. 8725 (Feb. 15, 2012). Thus, under the Mandate, some religious organizations and institutions, like churches and their "integrated auxiliaries," *id.*, enjoy a wholesale exemption from compliance, but other entities with religious principles and beliefs, like Korte & Luitjohan, for example, are subject to them. Such a discriminatory system gives obvious preference to the religious beliefs and practices of certain religious institutions over those who do not satisfy the government's definition of "religious employer"; it gives a *religious* preference; a preference for entities that practice their religion according to standards set out by the government, over those who do not. The Mandate thus fails the test of religious neutrality by granting a blanket exemption to religious institutions while leaving other religious employers unprotected — the very kind of "religious gerrymander" which demonstrates a lack of neutrality. *Lukumi*, 508 U.S. at 534 ("The Court must survey

meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders") (citations omitted).

In *Frazee v. Emp't Sec. Dep't,* 489 U.S. 829 (1989)*,* the Court definitively dismissed the idea (implicit in the Mandate and its narrow religious exemption) that institutionalized or organized religion is somehow entitled to greater deference than individual beliefs: "we reject the notion that to claim the protection of the Free Exercise Clause, one must be responding to the commands of a particular religious organization. Here, Frazee's refusal [to work on the Sabbath] was based on a sincerely held religious belief.  Under our cases, he was entitled to invoke First Amendment protection." *Id.* at 834.

Finally, there can be little doubt that the Mandate targets religiously-motivated conduct. "[T]he effect of a law in its real operation is strong evidence of its object." *Lukumi*, 508 U.S. at 535.  Because of the Mandate, employers like Plaintiffs cannot fashion their health insurance plans according to their religious, moral, and conscientious beliefs.  In the wake of the Mandate, employers like Plaintiffs must either abandon these religious, moral, and conscientious beliefs or pay substantial penalties.

**B.  The Mandate Is Not Generally Applicable.**

Because the Mandate does not apply to grandfathered health plans or religious employers as defined at 45 C.F.R. § 147.130(a)(iv)(B), and because employers with fewer than fifty employees can avoid the Mandate entirely by dispensing with health insurance, the Mandate is not generally applicable.[13]/   Unlike in *Smith*, which involved "across-the-board criminal prohibition on a particular form of conduct," 494 U.S. at 1603, the Mandate is not an "across-

---

[13]/ Individuals who are members of a "recognized religious sect or division" that conscientiously objects to acceptance of public or private insurance funds or are members of a "health care sharing ministry" are also exempt from the ACA and therefore the Mandate. *See* 26 U.S.C. §§ 5000A(d)(2)(A)(i), (ii), (B)(ii).

the-board requirement" that all employers nationwide include contraceptive services in health plans for employees.  The Mandate substantially burdens the religiously motivated conduct of Plaintiffs while, at the same time, exempting a sizable population that either has nothing to do with religion or that does not meet the government's definition of a "religious employer."  Such a scheme can hardly be described as generally applicable.

There can be no merit to an argument that, because these exemptions do not create a subjective, case-by-case inquiry into the reasons for an employer's objection to covering contraceptive services, strict scrutiny cannot apply.   *Smith* and *Lukumi* do not support this view. As now Justice Alito wrote for the Third Circuit in *Fraternal Order of Police v. City of Newark*, 170 F.3d 359, 365 (3d Cir. 1999) (emphasis added), holding that a police department violated the free exercise clause when it refused religious exemptions from prohibition against officers wearing beards while allowing medical exemption from same prohibition:

> While the Supreme Court did speak in terms of "individualized exemptions" in *Smith* and *Lukumi*, it is clear from those decisions that the Court's concern was the prospect of the government's deciding that secular motivations are more important than religious motivations. *If anything, this concern is only further implicated when the government does not merely create a mechanism for individualized exemptions, but instead, actually creates a categorical exemption for individuals with a secular objection but not for individuals with a religious objection.*

In other words, *categorical* secular exemptions make a law *even less* generally applicable than *individualized* secular exemptions.   And, in this case, there is something even more egregious than a categorical preference for secular exemptions over religious ones: it is a categorical exemption for one class of religious objectors over another class of religious objectors.   In addition, recognizing a categorical exemption for employers with grandfathered health plans but not employers with a religious objection to contraceptive services like Plaintiffs, belies any assertion that the Mandate is generally applicable.   By exempting some religious

objectors, but not others, and exempting some employers for secular reasons but not religious ones, the regulations at issues are "sufficiently suggestive of discriminatory intent so as to trigger heightened scrutiny under *Smith* and *Lukumi*." *Id.*; *see also Lukumi,* 508 U.S. at 542 ("All laws are selective to some extent, but categories of selection are of paramount concern when a law has the incidental effect of burdening religious practice. The Free Exercise Clause protect[s] religious observers against unequal treatment[. . . .]") (citation and internal marks omitted).

Where the government "has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardships' without compelling reason." *Lukumi*, 508 U.S. at 568 (internal citations omitted). Similarly, because the government under the ACA and the Mandate has in place a system of *categorical* exemptions, it may not refuse to exempt entities that demonstrate religious hardship, like Korte & Luitjohan, "without compelling reason." As previously explained, Defendants cannot satisfy the demanding standard of strict scrutiny. Thus, as a matter of law, Plaintiffs should be awarded summary judgment on their Free Exercise claim (Count II).

## CONCLUSION

Plaintiffs request that this court grant their motion for partial summary judgment.

Respectfully submitted on this 10th day of October, 2012.

|  |  |
|---|---|
|  | /s/ Edward L. White III |
| Francis J. Manion (KY 85594)* | Edward L. White III (MI P62485) |
| Geoffrey R. Surtees (KY 89063)* | Admitted to S.D. Illinois Bar |
| American Center for Law & Justice | American Center for Law & Justice |
| Post Office Box 60 | 5068 Plymouth Road |
| New Hope, Kentucky 40052 | Ann Arbor, Michigan 48105 |
| 502-549-7020; Fax. 502-549-5252 | 734-662-2984; Fax. 734-302-1758 |
| fmanion@aclj.org | ewhite@aclj.org |
| grsurtees@gmail.com |  |

*Applications for admission forthcoming

20

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2012, true and correct copies of the foregoing and exhibits were caused to be sent by certified United States Mail, return receipt requested, to the following:

U.S. Department of Health & Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201
Defendant
Tracking No.: 7011-3500-0003-0896-2452

U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C .20210
Defendant
Tracking No.: 7011-3500-0003-0896-2438

Kathleen Sebelius, Secretary
U.S. Department of Health & Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201
Defendant
Tracking No.: 7011-3500-0003-0896-2407

Hilda Solis, Secretary
U.S. Department of Labor
200 Constitution Ave., N.W.
Washington, D.C. 20210
Defendant
Tracking No.: 7011-3500-0003-0896-2384

U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220
Defendant
Tracking No.: 7011-3500-0003-0896-2414

Civil-process clerk
c/o Stephen Wigginton, U.S. Attorney
Southern District of Illinois
750 Missouri Avenue, 3rd Floor
East St. Louis, Illinois 62201
Tracking No.: 7011-3500-0003-0896-2445

Timothy Geithner, Secretary
U.S. Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220
Defendant
Tracking No.: 7011-3500-0003-0896-2391

Eric Holder, Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001
Tracking No.: 7011-3500-0003-0896-2469

/s/ Edward L. White III
Edward L. White III (MI P62485)
Admitted to S.D. Illinois Bar
American Center for Law & Justice
5068 Plymouth Road
Ann Arbor, Michigan 48105
734-662-2984; Fax. 734-302-1758
ewhite@aclj.org

21