## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CYRIL B. KORTE,<br>JANE E. KORTE, and<br>KORTE & LUITJOHAN<br>CONTRACTORS, INC.,<br><br>      Plaintiffs,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES,<br>KATHLEEN SEBELIUS,<br>UNITED STATES DEPARTMENT OF<br>THE TREASURY,<br>TIMOTHY F. GEITHNER,<br>UNITED STATES DEPARTMENT OF<br>LABOR,  and<br>HILDA L. SOLIS,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     **Case No. 3:12-CV-01072-MJR**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

        Plaintiffs Cyril B. Korte and Jane E. Korte (husband and wife) are equal

shareholders who together own a controlling interest in Plaintiff Korte & Luitjohan Contractors,

Inc., a secular, for-profit construction business.[1]  On October 9, 2012, the three Plaintiffs filed a

complaint for declaratory judgment and injunctive relief regarding whether they have to comply

with the Preventive Health Services coverage provision in the Women's Health Amendment (42

U.S.C. § 300gg–13(a)(4) (Mar. 23, 2010)) to the Patient Protection and Affordable Care Act of

2010, ("the ACA"), Pub. L. No. 111–148, 124 Stat. 119 (Mar. 23, 2010), as amended by the

Heath Care and Education Reconciliation Act, Publ. L. No. 111–152, 124 Stat. 1029 (Mar. 30

---

[1] Cyril B. Korte, as President, and Jane E. Korte, as Secretary, each hold a 43.674 % ownership
interest in Korte & Luitjohan Contractors, Inc., an Illinois corporation.

2010).  Plaintiffs name as defendants the three agencies charged with implementing and administering the mandate, and their respective heads: the Department of Health and Human Services and Secretary Kathleen Sebelius; the Department of the Treasury and Secretary Timothy F. Geithner; and the Department of Labor and Secretary Hilda L. Solis.

As a general matter, the ACA "aims to increase the number of Americans covered by health insurance and decrease the cost of health care." *National Federation of Independent Business v. Sebelius*, __U.S.__, 132 S.Ct. 2566, 2580 (Jun. 28, 2012).  In deciding to include a contraception coverage mandate, Congress found that: (1) the use of preventive services, including contraception, results in a healthier population and reduces health care costs (for reasons related and unrelated to pregnancy); and (2) access to contraception improves the social and economic status of women.  *See* 77 Fed. Reg. 8725, 8727-8728 (Feb. 15, 2012).

According to the contraception coverage mandate, unless grandfathered or otherwise exempt (which Korte & Luitjohan is not), commencing in plan years after August 1, 2012, employee group health benefit plans and health insurance issuers[2] must include coverage, without cost sharing, for "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures and patient education and counseling for all women with reproductive capacity," "[a]s prescribed."[3]  *See* Health Resources and Services Administration ("the HRSA"), *Women's Preventive Services: Required Health Plan Coverage Guidelines (*available at

---

[2] The mandate is directed at "[a] group health plan and a health insurance issuer offering group or individual health insurance coverage."  42 U.S.C. § 300gg-13(a).  Group health plans include insured and self-insured plans.  76 Fed. Reg. 46,621, 46,622 (Aug. 3, 2011).

[3] Employers with fewer than 50 employees are not required to provide any health insurance plan. 26 U.S.C. § 4980H(c)(2)(A).

http://www.hrsa.gov/womensguidelines/).[4] FDA-approved contraceptive medicines and devices include barrier methods, implanted devices, hormonal methods, and emergency contraceptive "abortifacients," such as "Plan B" (which prevents fertilization of the egg) and "Ella" (which stops or delays release of the egg).   *See* FDA, Birth Control Guide (Aug. 2012) (available at http://www.fda.gov/ForConsumers/ByAudience/ForWomen/ucm18465).   Employers with at least 50 employees that do not comply with the mandate face "fines, penalties [in the form of a tax], and enforcement actions for non-compliance. *See* 29 U.S.C. § 1132(a) (civil enforcement actions by the Department of Labor and insurance plan participants); 26 U.S.C. § 4980D(a), (b) (penalty of $100 per day per employee for noncompliance with coverage provisions of the ACA); 26 U.S.C. § 4980H (annual tax assessment for noncompliance with requirement to provide health insurance)." *Tyndale House Publishers, Inc. v. Sebelius*, __F.Supp.2d__, 2012 WL 5817323, *2 (D.D.C., Nov. 16, 2012). *See also* 77 Fed. Reg. 8725, 8729 (Fed. 15, 2012).

Plaintiffs Cyril B. Korte and Jane E. Korte ("the Kortes") are Catholic and have concluded that complying with the contraception coverage mandate would require them to violate their religious beliefs because the mandate requires them, and/or the corporation they control, to arrange for, pay for, provide, facilitate, or otherwise support not only contraception and sterilization, but also abortion.  By "abortion," the Kortes are referring to the fact that the "Food and Drug Administration approved contraceptive methods" include drugs and devices that are abortifacients, such as the "morning-after pill," "Plan B," and "Ella." According to the Kortes, they personally adhere to the Catholic Church's teachings that artificial means of

---

[4] The HRS guidelines and rationale are based on recommendations from the Institute of Medicine (IOM) (available at http://www.iom.edu/Reports/2011/Clinical-Preventive-Services-for-Women-Closing-the-Gaps.aspx).   The IOM estimates that 47 million women would be guaranteed access to preventive services under the mandate (excluding those who were covered by Medicare and those "grandfathered" and not covered by the ACA).

contraception, sterilization and actions intended to terminate human life are immoral and gravely

sinful.[5]  Also, the Kortes seek to manage and operate Korte & Luitjohan Contractors, Inc. ("K &

L") in a way that reflects the teachings, mission and values of their Catholic faith.[6]  As of

September 27, 2012 (13 days before this action was filed), K&L established written "Ethical

Guidelines" to that effect, but an exception is made when a physician certifies that certain

sterilization procedures or drugs commonly used as contraception are prescribed with the intent

to treat certain medical conditions, not with the intent to prevent or terminate pregnancy (Doc. 7-

2, p. 6).[7]  However, Plaintiffs acknowledge that in August 2012 they learned that their current

group health plan covers contraception.  The Kortes investigated ways to obtain coverage that

would comply with their beliefs and corporate policy, but they have yet to find an insurer that

will issue a policy that does not cover contraception.[8]  Plaintiffs acknowledge that they could

self-insure, but that does not relieve them of their legal obligation to comply with the ACA

mandate.

K&L currently has approximately 90 full-time employees; about 70 of those

employees belong to unions and about 20 employees are nonunion. As a "noncash benefit," K&L

provides group health insurance for its nonunion employees. Union employees are covered by

---

[5]  In furtherance of their Catholic faith, the Kortes both "strongly support, financially and
otherwise, Catholic fundraisers and other events, including, but not limited to, the STYDEC
Ghana project, restoration of their parish church, annual church picnic, and annual parish school
auction."  (Doc. 2, p. 5 ¶ 22).

[6]  The Articles of Incorporation make no reference to the Catholic faith in K&L's stated purpose;
only secular construction, excavating and contracting are mentioned (Doc. 22-1).

[7]  During oral argument, Plaintiffs indicated that the physician's characterization would control,
even if a contraceptive had a dual use.

[8]  "[A] sincere religious believer doesn't forfeit his religious rights merely because he is not
scrupulous in his observance; for where would religion be without its backsliders, penitents, and
prodigal sons?" *Grayson v. Schuler*, 666 F.3d 450, 454 -455 (7th Cir. 2012).

separate health insurance through their respective unions, over which Plaintiffs have no control.[9] If K&L does not provide the mandated contraceptive coverage, it estimates that it will be required to pay approximately $730,000 per year as a tax and/or penalty, which it considers "ruinous."   K&L does not want to abandon providing health coverage because it would severely impact K&L's ability to compete with other companies that offer such coverage, and K&L employees would have to obtain expensive individual policies in the private marketplace.[10]

Plaintiffs have brought suit contending that the ACA mandate violates the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb–1 (2006), the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment, the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553(b)-(c), 706(2)(A), 706(2)(D) (2006).

Plaintiffs now move for a preliminary injunction relative to Counts I and II of the complaint, their RFRA and Free Exercise Clause claims (Docs. 6 and 7).   Defendants filed a memorandum in opposition (Doc. 22), to which Plaintiffs replied (Doc. 26).   The Court has also received briefs *amicus curiae* from: the American Civil Liberties Union and American Civil Liberties Union of Illinois, in support of Defendants (Doc. 32); the Liberty, Life and Law Foundation, in support of Plaintiffs (Doc. 39); and Women Speak for Themselves, Bioethics Defense Fund and Life Legal Defense Foundation, in support of Plaintiffs (Doc. 48).   Plaintiffs filed a reply to the American Civil Liberties' brief (Doc. 43).   In addition, oral argument was heard on December 7, 2012.

---

[9] Plaintiffs and Defendants agree that the fact that the union/nonunion distinction cannot be used to qualify K&L as a small business with under 50 employees.

[10] Pursuant to the Illinois Health Care Right of Conscience Act, 745 ILCS 70/3, K&L is exempt from a similar Illinois coverage mandate.

Defendants assert that K&L, a secular, for-profit corporation, is not a "person" and cannot exercise religion; therefore, the ACA mandate does not violate the Free Exercise Clause or RFRA.   From Defendants' perspective, K&L is attempting to eliminate the legal separation provided by the corporate form in order to impose the personal religious beliefs of its directors upon K&L's employees.   Defendants further fear opening the door to for-profit corporations claiming a variety of exemptions from untold general commercial laws, obviating the government's ability to tackle national problems by way of rules of general applicability.

## I.  Applicable Legal Standards

### A.  Injunctive Relief

To obtain a preliminary injunction, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Department of Health*, 699 F.3d 962, 972 (7th Cir. 2012).  *See also American Civil Liberties Union of Illinois v. Alvarez,* 679 F.3d 583, 589–590 (7th Cir. 2012); *Christian Legal Society v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006); *Joelner v. Village of Washington Park, Illinois,* 378 F.3d 613, 619 (7th Cir. 2004). If this threshold showing is made, the Court balances the harm to the parties if the injunction is granted or denied, as well as the effect of an injunction on the public interest. *See Alvarez,* 679 F.3d at 589–590; *Christian Legal Society,* 453 F.3d at 859.  "The more likely it is that [the moving party] will win its case on the merits, the less the balance of harms need weigh in its favor." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States, Inc.,* 549 F.3d 1079, 1100 (7th Cir. 2008).

The Court of Appeals for the Seventh Circuit has advised that, relative to preliminary injunctions in First Amendment cases:

> "[T]he likelihood of success on the merits will often be the determinative factor." *Joelner v. Village of Washington Park, Ill.,* 378 F.3d 613, 620 (7th Cir.2004). This is because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion), and the "quantification of injury is difficult and damages are therefore not an adequate remedy," *Flower Cab Co. v. Petitte,* 685 F.2d 192, 195 (7th Cir. 1982). Moreover, if the moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional. *Joelner,* 378 F.3d at 620. Stated differently, "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006).

*Alvarez,* 679 F.3d at 589-590 (footnote omitted).

B. Free Exercise Clause

The First Amendment provides that Congress shall make no law "prohibiting the free exercise" of religion. *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.,* __U.S.__, 132 S.Ct. 694, 702 (Jan. 11, 2012). However, the "right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Employment Division, Department of Human Resources of Oregon v. Smith,* 494 U.S. 872, 879 (1990) (internal punctuation omitted). The Court of Appeals for the Seventh Circuit has observed, "[i]f they were excused, this might be deemed favoritism to religion and thus violate the establishment clause." *River of Life Kingdom Ministries v. Village of Hazel Crest, Illinois,* 611 F.3d 367, 370 (7th Cir. 2010).

C. RFRA

The Religious Freedom Restoration Act of 1993 ("RFRA"), 107 Stat. 1488, 42 U.S.C. § 2000bb *et seq.,* prohibits the federal government from substantially burdening "a

person's" exercise of religion, "even if the burden results from a rule of general applicability" (§ 2000bb-1(a)), except when the government can "demonstrat[e] that application of the burden to the person-(1) [furthers] a compelling governmental interest; and (2) is the least restrictive means of furthering that . . . interest," (§ 2000bb-1(b)). A statutory cause of action is created under 42 U.S.C. § 2000bb-1(c), and standing to bring such a suit is determined under the general rules for standing under Article III of the Constitution.

RFRA affords more protection than the Free Exercise Clause. Congress enacted RFRA in response to *Employment Division, Department of Human Resources of Oregon. v. Smith,* 494 U.S. 872, 883-890 (1990), where, in upholding a generally applicable law that burdened a religious practice, the Supreme Court held that the Free Exercise Clause does <u>not</u> require a case-by-case assessment of the burdens imposed by facially constitutional laws.  *See Sossamon v. Texas*, __U.S.__, 131 S.Ct. 1651, 1656 (2011); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006).  RFRA was designed to restore the "compelling interest" test as set forth in *Sherbert v. Verner,* 374 U.S. 398 (1963), and *Wisconsin v. Yoder,* 406 U.S. 205 (1972), where free exercise of religion is substantially burdened.

## II.  Issues and Analysis

A.  <u>Standing and Ripeness</u>

Defendants' contentions that K&L is a secular corporation that cannot exercise religion, and that any burden on religious exercise is too attenuated to be actionable, along with the uncertainty regarding whether any K&L employee will ever seek coverage for contraception, beg the questions of standing and ripeness.

> An Article III court enjoys jurisdiction over a case only if the plaintiff demonstrates that he suffered an injury in fact, the defendant's actions caused the injury, and the remedy he seeks would redress his injury. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d

> 556 (1984); *see also [American Civil Liberties Union of Illinois v.]*
> *Alvarez,* 679 F.3d [583,] 590–91[(7th Cir. 2012)]. When the plaintiff
> applies for prospective relief against a harm not yet suffered—or one he
> believes he will suffer again—he must establish that he "is immediately in
> danger of sustaining some direct injury as the result of the challenged
> official conduct [,] and [that] the injury or threat of injury [is] both real
> and immediate, not conjectural or hypothetical." *City of Los Angeles v.*
> *Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (internal
> quotation marks omitted). Otherwise, he fails to allege an actual case or
> controversy before the court. *See* U.S. CONST. art. III, § 2, cl. 1.

*Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012); *see also Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560-561 (1992). "A claim is not ripe for adjudication if it rests upon contingent future

events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*,

523 U.S. 296, 300 (1998).

In *520 Michigan Avenue Associates. Ltd. v. Devine*, 433 F.3d 961, 962-963 (7th

Cir. 2006), the Court of Appeals for the Seventh Circuit recognized that courts have frequently

found standing for pre-enforcement actions based on the potential cost of complying and/or

penalties for noncompliance. As already noted, K&L must secure its group health plan in

approximately two weeks and, if the plan does not cover contraception, there will be a

substantial monetary assessment.

Relative to whether K&L has standing, in *Citizens United v. Federal Election*

*Commission*, __U.S.__, 130 S.Ct. 876, 899 (2010), the Supreme Court broadly stated that "First

Amendment protection extends to corporations." Drawing from *First National Bank v. Bellotti*,

435 U.S. 765, 783 (1978), the high court specifically found that, even though they are not natural

persons, corporations can exercise political speech because, like individuals, corporations

contribute to discussion, debate and the distribution of ideas and information. Religious

institutions have long been organized as corporations at common law and under the King's

charter. *Citizens United*, 130 S.Ct. at 926-927 (Scalia, J., concurring; joined by Alito, J., and

9

Thomas, J.)).  However, whether secular corporations can exercise religion is an open question. This Court does not need to specifically decide whether a secular, for-profit corporation can exercise religion.  A corporation may engage in activities to advance a belief system, and may assert constitutional rights on its own behalf and on behalf of its members.  *See generally National Association for the Advancement of Colored People v. Button*, 371 U.S. 415, 428-430 (1963).

Relative to the Kortes, in *Powers v. Ohio,* 499 U.S. 400 (1991), the Supreme Court explained that, in certain limited exceptions, it has "recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied": (1) "[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute"; (2) "the litigant must have a close relation to the third party"; and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests." *Id*. at 410–411 (citations omitted).  In *Rothner v. City of Chicago*, 929 F.2d 297, 301 (7th Cir. 1991) the appellate court observed that courts have viewed assertions of third-party standing "quite charitably," and this Court will do the same.  Because K&L is a family-owned S corporation[11], the religious and financial interests of the Kortes are virtually indistinguishable.  Therefore, the Kortes satisfy the third-party standing test for purposes of presenting the Free Exercise Clause and RFRA claims of K&L. Consequently, the Kortes *and*

---

[11]     S corporations are "pass-through" organizations that do not pay income tax themselves, but pass their income, gain, deduction, loss and credit (collectively referred to as "tax items") through to their owners.  Pass-through organizations report their tax items on a tax return in the name of the organization and report those items to their owners who, in turn, report the tax items on their returns.

Robert R. Keatinge and Ann E. Conaway, *Keatinge and Conaway on Choice of Business Entity: Selecting Form and Structure of a Closely Held Business* § 14:2 (2012).

K&L have standing to sue; their injuries are sufficiently concrete.   Further, more rigorous analysis of the merits of Plaintiffs' claims will follow.

Although K&L has yet to violate the statute, the monetary assessment that awaits if it does not comply with the mandate is certain, and the deadline for securing insurance is fast approaching.   This imminent, substantial threat is sufficient for ripeness.   *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 149-153 (1967) (a declaratory judgment action is ripe if the regulation at issue requires "immediate and significant" conduct).

B.  Likelihood of Success on the Merits

Adhering to the analytical framework for securing a preliminary injunction, Plaintiffs' likelihood of success on their Free Exercise Clause and RFRA claims must be addressed.   Plaintiffs contend that "*some* likelihood of success on the merits" is all that is required—suggesting a very light burden.   *See Stuller, Inc. v. Steak N Shake Enterprises, Inc*., 695 F.3d 676, 678 (7th Cir. 2012) (emphasis added); *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012).   However, the court of appeals' most recent iteration of the standard specifies a "*reasonable* likelihood of success on the merits." *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Department of Health*, 699 F.3d 962, 972 (7th Cir. 2012) (emphasis added).   Furthermore, in the context of securing such an extraordinary remedy, a "possibility" has been found to be less than a "likelihood."   *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 22 (2008) (parsing the meaning of "likely" relative to the "irreparable harm" requirement for issuance of a preliminary injunction).   As already noted, the stronger the chance of success on the merits, the less the balance of harms must tip in Plaintiffs' favor. *Planned Parenthood of Indiana, Inc.,* 699 F.3d at 972.

Plaintiffs have moved for summary judgment on the merits, but the time for Defendants to respond has not passed.  However, during oral argument on the motion for a preliminary injunction Plaintiffs indicated that the arguments currently before the Court relative to the injunction are all that they have to present.  The Court's analysis regarding the likelihood of success is, therefore, less speculative and more in-depth than is often the case.  Of course, the Court's ruling on the motion for an injunction is not dispositive of Plaintiffs' motion for summary judgment.

1.   Free Exercise

As in *Hobby Lobby Stores, Inc., v. Sebelius*, __F.Supp.2d__, 2012 WL 5844972, at *5 (W.D. Okla. Nov. 19, 2012), the undersigned district judge views the exercise of religion as a "purely personal" guarantee that cannot be extended to corporations.  *See First National Bank of Boston v. Bellotti*, 435 U.S. 765, 778 n. 14 (1978) (observing that corporate identity has been determinative of why corporations are denied, for example, the privilege against self-incrimination (*see Wilson v. United States*, 221 U.S. 361, 382-386 (1911)), or the right to privacy on a par with individuals (*see California Bankers Association v. Shultz*, 416 U.S. 21, 65-67 (1974)).  In *Bellotti*, 435 U.S. at 778 n. 14, the Supreme Court indicated that whether a constitutional guarantee is "purely personal" "depends on the nature, history, and purpose of the particular provision."   In *Wallace v. Jaffree*, 472 U.S. 38, 49 (1985), the Supreme Court explained:  "As is plain from its text, the First Amendment was adopted to curtail the power of Congress to interfere with the individual's freedom to believe, to worship, and to express himself in accordance with the dictates of his own conscience."   James Madison eloquently stated, "[t]he Religion . . . of every man must be left to the conviction and conscience of every man; and it is the right of every man to exercise it as these may dictate." *Hein v. Freedom from Religion*

12

*Foundation, Inc.*, 551 U.S. 587, 638 (2007) (Souter, J., dissenting) (quoting 2 Writings of James Madison 184 (G. Hunt ed. 1901)).  Thus, a corporation may be able to advance a belief system, but it cannot exercise religion.  In any event, Plaintiffs' Free Exercise Clause claim has little or no chance of success on its merits, regardless of whether a corporation can exercise religion.

From Plaintiffs' perspective, the mandate is not a neutral law of general applicability, and it substantially burdens their exercise of religion; therefore, strict scrutiny should apply (similar to the RFRA analysis).  Plaintiffs note that nonprofit churches and religious institutions are exempted under the government's definition of a "religious employer," but no exemption is afforded to for-profit religious employers like K&L.  Plaintiffs perceive a religious preference in favor of religious entities that fall within the statute's definition, as opposed to religious neutrality.  Also, Plaintiffs see the mandate as targeting religiously motivated conduct.  Plaintiffs further argue that the mandate is not generally applicable because it does not apply to employers with fewer than 50 full-time employees (26 U.S.C. § 4980H(c)(2)(A)), "grandfathered" plans in existence since March 23, 2010 (75 Fed. Reg. 41726, 41731 (Jul. 19, 2010)), nonprofit religious employers (76 Fed. Reg. 46621, 46626 (Aug. 3, 2011); 77 Fed. Reg. 8725 (Feb. 15, 2012)), or health care sharing ministries (26 U.S.C. §§ 5000A(d)(2)(A)(i), (ii), (B)(ii)).  Plaintiffs highlight that in *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993), the Supreme Court stated that, where the government "has in place a system of individual exemptions, it may not refuse to extend the system to cases of 'religious hardships' without compelling reasons." *Id.* at 568 (internal citations omitted).

Relative to the neutrality of the mandate, in *Church of the Lukumi Babalu Aye* the Supreme Court recognized that whether a law has an impermissible object may be discerned by looking at the face of the law, its "real operation," as well as the legislative history of the law.

*Id.* at 534, 535, 540.   On its face, the ACA mandate makes no mention of religion whatsoever. The legislative history does not reflect any impermissible object; rather, the purpose was tied to public health and gender equality, not religion.   *See* 77 Fed. Reg. 8725, 8727-8728 (Feb. 15, 2012).

Plaintiffs contend that, because there are so many exemptions, the mandate is not generally applicable.   Plaintiffs cite projections that there are as many as 193 million grandfathered plans that may be exempted from the mandate.   *See Legatus v. Sebelius*, __F.Supp.2d__, 2012 WL 5359630, at \*9 (E.D. Mich. Oct. 31, 2012) (citing 75 Fed. Reg. 34,538, 34,540 (Jun. 17, 2010)).   The government asserts that the grandfathering mechanism helps ease the transition of the mandate.[12]   Like the district court in *Legatus*, this Court does not perceive how a gradual transition undercuts the neutral purpose or general applicability of the mandate.   And, Plaintiffs do not link the grandfathering mechanism to any sort of religious preference.

According to the associated regulations, to qualify as an exempted "religious employer," an employer must meet all of the following criteria: (1) the inculcation of religious values is the purpose of the organization; (2) the organization primarily employs persons who share the religious tenets of the organization; (3) the organization serves primarily persons who share the religious tenets of the organization; and (4) the organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended. 45 C.F.R. § 147.130(a)(1)(iv)(B).   The "religious" exemption is not targeted to a particular religion or belief.   However, Plaintiffs perceive that the exemption

---

[12] The mid-range estimate is that 66 percent of small employer plans and 45 percent of large employer plans will relinquish their grandfather status by the end of 2013.  *See* 75 Fed. Reg. 34,538, 34,552 (Jun. 17, 2010).

impermissibly favors nonprofit religious organizations, and excludes for-profit organizations, such as K&L, that are operated consistent with religious beliefs.

The Supreme Court has long recognized that one's religious beliefs cannot exempt one from complying with an otherwise valid law; otherwise, every citizen's beliefs would trump the law of the land—exceptions would swallow every rule. *See Reynolds v. United States*, 98 U.S. 145, 166-167 (1878); *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878-879 (1990) (in response to *Smith*, RFRA was passed, requiring the least restrictive means be used). Furthermore, "the course of constitutional neutrality in this area cannot be an absolutely straight line." *Walz v. Tax Commission of City of New York*, 397 U.S. 664, 669 (1970). Accordingly, statutory accommodations and exemptions for nonprofit religious organizations have been permitted as a mere accommodation of, and attempt to balance, the Free Exercise and Establishment Clauses. *See generally Walz*, 397 U.S. at 659-672 (discussing the First Amendment "tight rope" that must be traversed relative to tax exemptions for nonprofit religious organizations).

Plaintiffs see no difference between their efforts to run the for-profit K&L construction business in a manner consistent with religious principles and a traditional nonprofit, religious organization. Most recently, in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, __U.S.__, 132 S.Ct. 694 (Jan. 11, 2012), the Supreme Court recognized a fine line between religious and secular associations. First Amendment analysis for a religious organization, such as the Lutheran Church, was found to be different than the analysis that would be used relative to, for example, a labor union or social club. *Id*. at 706. The high court distinguished between teachers with a formal religious imprimatur and lay teachers. A religious exemption from compliance with the Americans with Disabilities Act was applied to the "called"

teacher, despite the fact that all teachers were performing the same duties at the same religious school.  Thus, a corporation that has primarily a secular purpose, such as construction, can be distinguished from a "religious" corporation (as defined by statute).

Lastly, even if in practice the law incidentally impacts Plaintiffs' religious beliefs (or prefers those who do not hold such religious convictions), it does not necessarily follow that Plaintiffs have been impermissibly burdened.  *See City of Boerne v. Flores*, 521 U.S. 507, 535 (1997).  The law is not so narrowly drawn as to "target" Plaintiffs' religious beliefs.  The mandate applies to a broader range of contraception than just the abortifacients Plaintiffs' find objectionable.

For these reasons, there is a substantial likelihood the ACA contraception mandate will be found to be a neutral law of general applicability that only incidentally burdens Plaintiffs' religious exercise.  Therefore, at this juncture, the Court will not address Plaintiffs' assertions that the mandate substantially burdens their free exercise of religion.

2. RFRA

RFRA prohibits the federal government from substantially burdening "a person's" exercise of religion, "even if the burden results from a rule of general applicability" (§ 2000bb-1(a)), except when the government can "demonstrat[e] that application of the burden to the person-(1) [furthers] a compelling governmental interest; and (2) is the least restrictive means of furthering that . . . interest," (42 U.S.C. § 2000bb-1(b)). RFRA potentially affords Plaintiffs greater protection than the First Amendment because the mandate must withstand strict scrutiny—the compelling interest test.  Accordingly, during oral argument the parties focused exclusively on the RFRA claim.

a.  The Applicability of RFRA

By its terms, RFRA is applicable to "persons." 42 U.S.C. § 2000bb-1(b). Defendants argue that K&L, as a secular, for-profit corporation, cannot exercise religion. Defendants further observe that the ACA mandate applies only to group health plans[13] and health insurance issuers, not individuals or corporations, unless self-insured (42 U.S.C. § 300gg-13(a)). Plaintiffs counter that, pursuant to 1 U.S.C. § 1, in determining the meaning of any statute, a corporation is a "person" unless the context indicates otherwise.[14]

The Kortes, obviously, are "persons," and, as already discussed, because K&L is a closely held S corporation, the Kortes fall within the ambit of RFRA. K&L also qualifies as a "person" under RFRA. Again, this is consistent with the fact that religious institutions have long been organized as corporations (*see Citizens United v. Federal Election Commission*, __U.S.__, 130 S.Ct. 876, 926-929 (2010) ((Scalia, J., concurring; joined by Alito, J., and Thomas, J.)), and with the notion that corporations can engage in activities to advance a belief system (s*ee generally National Association for the Advancement of Colored People v. Button*, 371 U.S. 415, 428-430 (1963)). This sort of symbiotic relationship is not inconsistent with the advancement of a belief system. However, the RFRA "substantial burden" inquiry makes clear that business forms and so-called "legal fictions" cannot be entirely ignored—in this situation, they are dispositive.

---

[13] A group health plan is legally distinct from the company that sponsors it. 29 U.S.C. § 1132(d).

[14] "[W]e do not assume that a statutory word is used as a term of art where that meaning does not fit. Ultimately, context determines meaning, *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961), and we "do not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense," *Gonzales v. Oregon,* 546 U.S. 243, 282, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) (SCALIA, J., dissenting)." *Johnson v. United States,* __U.S.__, 130 S.Ct. 1265, 1270 (2010).

b.  Substantial Burden

Plaintiffs must initially show a substantial burden on their religious beliefs.  *See Gonzales v. O Centro Espirita Beneficent Uniao do Vegetal*, 546 U.S. 418, 429 (2006).

While neither dispositive nor determinative, the Court again notes the Plaintiffs' current health insurance plan covers the very preventive health services they seek to enjoin. There is a palpable inconsistency in claiming the ACA contraception mandate substantially burdens their religious beliefs while they currently maintain the same coverage in their existing pre-ACA health plan.

Plaintiffs claim that the ACA contraception coverage mandate forces them to choose between adhering to their religious beliefs and paying "ruinous" penalties for non-compliance.  K&L foresees losing their employees' goodwill, and being placed at a competitive disadvantage in the business marketplace.  During oral argument, Plaintiffs emphasized that they do not seek to impose their religious beliefs upon others; rather, they just do not want to be forced to foster or sponsor a plan that is contrary to their religious beliefs.[15]  As evidence that the government recognizes the substantial burden the mandate imposes, Plaintiffs cite the current exemption for nonprofit religious employers (76 Fed. Reg. 46621, 46626 (Aug. 3, 2011)), and the temporary "safe harbor" from enforcement afforded to non-grandfathered group health plans sponsored by nonprofit organizations with religious objections to contraception coverage (77 Fed. Reg. 8725, 8726-8727 (Feb. 15, 2012)).

Defendants do not challenge the sincerity of the Kortes' religious beliefs, but they do question the burden imposed under the mandate, particularly in light of the fact that K&L's

---

[15] Under the RFRA, "exercise of religion" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *See* 42 U.S.C. § 2000bb–2 (defining "exercise of religion" as defined in 42 U.S.C. § 2000cc–5).

current insurance plan covers contraception. From Defendants' perspective, any burden is *de minimus* and too attenuated to trigger strict scrutiny. This Court agrees, albeit for more nuanced reasons.

In *Wisconsin v. Yoder*, 406 U.S. 205 (1972), a compulsory school-attendance law was found to violate the Free Exercise Clause because parents were forced to choose between endangering their salvation and criminal penalties (a fine of not less than $5, nor more than $50, and imprisonment for up to three months). In *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707 (1981), the plaintiff was denied unemployment benefits after he felt compelled to leave his job in a foundry because his religious beliefs. The tenets of his religion forbade his involvement in the production of weapons, and his employer had just started manufacturing military tank parts. The Supreme Court explained that, where the receipt or denial of an important benefit is conditioned upon conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and violate his beliefs, a burden upon religion exists. *Id*. at 717-718. *Sherbert v. Verner*, 374 U.S. 398 (1963), similarly illustrates that the pressure does not have to be direct. In *Sherbert*, a Free Exercise Clause violation was found relative to an individual whose religious beliefs prevented work on Saturdays and consequently disqualified that person from state unemployment compensation benefits, which required one to accept work when offered.

In *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760-761 (7th Cir. 2003), relative to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, the Court of Appeals for the Seventh Circuit looked to RFRA and Free Exercise precedents and concluded that the burden *must* be "substantial" to trigger strict scrutiny:

> [I]n the context of RLUIPA's broad definition of religious exercise, a . . . regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary and fundamental responsibility for rendering religious exercise . . . effectively impracticable.

*Civil Liberties for Urban Believers*, 342 F.3d at 761.  *See also Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) (looking to *Thomas*, 450 U.S. at 718, to define "effectively impracticable"). From this Court's perspective, the ACA mandate (and its penalty/tax) will not be directly, primarily and fundamentally responsible for rendering the Kortes' adversity to abortifacients effectively impracticable.

Any inference of support for contraception stemming from complying with the neutral and generally applicable mandate is a *de minimus* burden. It appears that Plaintiffs' objection presupposes that an insured will actually use the contraception coverage.  Even assuming that there is a substantial likelihood that a K&L employee will do so, at that point the connection between the government regulation and the burden upon the Kortes' religious beliefs is too distant to constitute a substantial burden.

Plaintiffs see their situation as being analogous, if not identical, to *Yoder*, *Thomas* and *Sherbert*.  However, in *Yoder*, *Thomas* and *Sherbert* individuals *personally* faced a choice, even when the pressure was indirect.  K&L is not a person and only reflects the Kortes' religious beliefs.  The fact that a "corporate veil" (regardless of how thin) stands between the Kortes and K& L, and another legal "veil" is between K&L and the group health plan, cannot be ignored.

In *U.S. v. Lee,* 455 U.S. 252, 261 (1982), the Amish plaintiff was self-employed and did not qualify for a religious exemption from paying social security taxes.  Social Security runs counter to the Amish religious belief in providing for themselves.  Although Lee involved a self-employed person, the Supreme Court still recognized that, "[w]hen followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own

20

conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity." Similarly, by assuming the corporate form, the Kortes chose to accept the limitations of that form.  Plaintiffs would rather obliterate any distinction between business entities and individuals. Specific to the ACA contraception coverage mandate, two other district courts have acknowledged how an individual can become distanced by what are often characterized as "legal fictions.

In *Tyndale House Publishers, Inc. v. Sebelius*, __F.Supp.2d __, 2012 WL 5817323 at *13 (D.D.C. Nov. 16, 2012), the plaintiff prevailed; a substantial burden was found and a preliminary injunction was issued.  Nevertheless, the district court considered it a "crucial distinction" that the plaintiff corporation was self-insured, "thereby removing one of the 'degrees' of separation." *Id.*  The court in *Tyndale* was attempting to distinguish *O'Brien v. United States Department of Health and Human Services*, __F.Supp.2d __, 2012 WL 4481208 (E.D. Mo. Sept. 28, 2012), where a secular, for-profit limited liability corporation was contributing to a health insurance plan.  In *O'Brien*, the district court concluded:  "RFRA does not protect against the slight burden on religious exercise that arises when one's money circuitously flows to support the conduct of other free-exercise-wielding individuals who hold religious beliefs that differ from one's own." *Id*. at *6.[16]

Because this Court does not perceive that the ACA contraception mandate imposes a substantial burden on Plaintiffs' free exercise of religion, the Court must find that Plaintiffs have failed to satisfy their burden, which leads to the conclusion that Plaintiffs do not

---

[16] During oral argument, Plaintiffs made much of the fact that the district court's order in *O'Brien* had just been stayed pending appeal, in effect granting the plaintiff corporation a preliminary injunction.  *O'Brien v. United States Department of Health and Human Services*, No. 12-3357 (8th Cir.  Nov. 28, 2012).  Plaintiffs seem to consider the appellate court's one-sentence order as being tantamount to a holding that a substantial burden and successful RFRA claim had been found, which remains to be seen.

have a reasonable likelihood of success on the merits of their RFRA claim.   Consequently, no further analysis of the RFRA claim is necessary.

## III.  Conclusion

For the reasons stated, the Court finds that Plaintiffs Cyril B. Korte, Jane E. Korte, and Korte & Luitjohan Contractors, Inc., have failed to show a reasonable likelihood of success on the merits of either their Free Exercise Clause or RFRA claims, which is necessary to secure a preliminary injunction.  In *Legatus v. Sebelius*, __F.Supp.2d __, 2012 WL 5359630 at *14 (E.D. Mich. Oct. 31, 2012), the district court concluded that, although neither party had failed to show a substantial likelihood of success on the merits, because of the possibility of serious harm to the plaintiffs' religious exercise, the balance tipped in favor of an injunction. The Supreme Court, however, has cautioned that, "[i]ssuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Resources Defense Council, Inc.* 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (emphasis added)).  Therefore, Plaintiffs' motion for a preliminary injunction (Doc. 6) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  December 14, 2012**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**