# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

December 28, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 12-3841 | |
| CYRIL B. KORTE, et al., <br>     *Plaintiffs-Appellants,* <br><br> v. <br><br> KATHLEEN SEBELIUS, in her official capacity as the Secretary of the United States Department of Health and Human Services, et al., <br>     *Defendants-Appellees.* | Appeal from the United States District Court for the Southern District of Illinois. <br><br> No. 3:12-CV-01072-MJR <br><br> Michael J. Reagan, <br> *Judge*. |

**O R D E R**

    The following are before the court:

1.     PLAINTIFFS-APPELLANTS' EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL BEFORE JANUARY 1, 2013, filed on December 18, 2012, by counsel for the appellants.

2.     OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL, filed on December 21, 2012, by counsel for the appellees.

Case 3:12-cv-01072-MJR-PMF   Document 64   Filed 01/02/13   Page 2 of 8   Page ID #577
Case: 12-3841   Document: 15   Filed: 12/28/2012   Pages: 8

No. 12-3841                                                                                     Page 2

3.  PLAINTIFFS-APPELLANTS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL BEFORE JANUARY 1, 2013, filed December 21, 2012, by counsel for the appellants.

Cyril and Jane Korte and their construction company, Korte & Luitjohan Contractors, Inc. ("K & L Contractors"), appeal the denial of their motion for a preliminary injunction against the enforcement of provisions of the Patient Protection and Affordable Care Act ("ACA") and related regulations requiring that K & L Contractors purchase an employee health-insurance plan that includes no-cost-sharing coverage for contraception and sterilization procedures. *See* 42 U.S.C. § 300gg-13(a)(4); 77 Fed. Reg. 8725 (Feb. 15, 2012). They have moved for an injunction pending appeal. *See* FED. R. APP. P. 8. For the reasons that follow, the motion is granted.

The record at this stage of the proceedings is necessarily limited, but the parties do not substantially disagree about the facts. Cyril and Jane Korte own K & L Contractors, a construction firm with approximately 90 full-time employees. About 70 of their employees belong to a union, which sponsors their health-insurance plan; K & L Contractors provides a group health-insurance plan for the remaining 20 nonunion employees. The Kortes are Roman Catholic, and they seek to manage their company in a manner consistent with their Catholic faith, including its teachings regarding the sanctity of human life, abortion, contraception, and sterilization. In August 2012 they discovered that the company's current health-insurance plan includes coverage for contraception. The plan renewal date is January 1, 2013. The Kortes want to terminate this coverage and substitute a health plan (or a plan of self-insurance) that conforms to the requirements of their faith. The ACA's preventive-care provision and implementing regulations prohibit them from doing so.

More specifically, as relevant here, the ACA requires nongrandfathered and nonexempt group health-insurance plans to cover certain preventive health services without cost-sharing, *see* 42 U.S.C. § 300gg-13(a)(4), and regulations promulgated by the United States Department of Health and Human Services ("HHS") specify that the required coverage must include all FDA-approved contraceptive methods and sterilization procedures, *see* 77 Fed. Reg. 8725 (Feb. 15, 2012) ("the contraception mandate" or "the mandate"). This includes oral contraceptives with abortifacient effect (such as the "morning-after pill") and intrauterine devices. *See id.*; OFFICE OF WOMEN'S HEALTH, FOOD & DRUG ADMIN., BIRTH CONTROL GUIDE 10-12, 16-20 (2012), http://www.fda.gov/downloads/ForConsumers/ByAudience/ForWomen/FreePublications/UCM282014.pdf.

The contraception mandate takes effect starting in the first plan year after August 1, 2012. 77 Fed. Reg. 8725-26. For the Kortes and their company, that date is January 1, 2013. Employers who do not comply are subject to enforcement actions and substantial financial

Case 3:12-cv-01072-MJR-PMF   Document 64   Filed 01/02/13   Page 3 of 8   Page ID #578
Case: 12-3841   Document: 15   Filed: 12/28/2012   Pages: 8

No. 12-3841                                                                                              Page 3

penalties. *See* 29 U.S.C. § 1132(a); 26 U.S.C. § 4980D(a), (b) ($100 per day per employee for noncompliance with coverage provisions); 26 U.S.C. § 4980H (approximately $2,000 per employee annual tax assessment for noncompliance). The Kortes estimate that for K & L Contractors, the penalties could be as much as $730,000 per year, an amount that would be financially ruinous for their company and for them personally.

On October 9, 2012, the Kortes and K & L Contractors (collectively, "the Kortes") filed suit against HHS Secretary Kathleen Sebelius seeking declaratory and injunctive relief against the enforcement of the contraception mandate, alleging that it violates their rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1; the First Amendment's Free Exercise, Establishment, and Speech Clauses; the Fifth Amendment's Due Process Clause; and the Administrative Procedure Act, 5 U.S.C. §§ 553(b)-(c), 706(2)(A), (D). They immediately moved for a preliminary injunction. On December 14, 2012, the district court denied the motion. On December 17, 2012, the Kortes appealed, *see* 28 U.S.C. § 1292(a)(1), and the next day they filed an emergency motion for an injunction pending appeal. For purposes of the motion, they rely solely on their RFRA claim.

We evaluate a motion for an injunction pending appeal using the same factors and "sliding scale" approach that govern an application for a preliminary injunction. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547-48 (7th Cir. 2007). The Kortes must establish that they have "(1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011); *see also Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012), *cert. denied*, No. 12-318, 2012 WL 4050487 (U.S. Nov. 26, 2012). Once the threshold requirements are met, the court weighs the equities, balancing each party's likelihood of success against the potential harms. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008); *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992). The more the balance of harms tips in favor of an injunction, the lighter the burden on the party seeking the injunction to demonstrate that it will ultimately prevail. *Abbott Labs.*, 971 F.2d at 12. In other words, the sliding-scale approach requires us "simply to weigh[] [the] harm to a party by the merit of his case." *Cavel*, 500 F.3d at 547.

We conclude that the Kortes have established both a reasonable likelihood of success on the merits and irreparable harm, and that the balance of harms tips in their favor. RFRA prohibits the federal government from imposing a "substantial[] burden [on] a person's exercise of religion even if the burden results from a rule of general applicability" *unless* the government demonstrates that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b). This is the strict-scrutiny test

No. 12-3841 Page 4

established in *Sherbert v. Verner*, 374 U.S. 398 (1963), for evaluating claims under the Free Exercise Clause. It was displaced by *Employment Division, Department of Human Resources of Oregon v. Smith,* 494 U.S. 872 (1990), but Congress codified it in RFRA. *See Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal,* 546 U.S. 418, 424 (2006); *River of Life Kingdom Ministries v. Village of Hazel Crest, Ill.*, 611 F.3d 367, 379 (7th Cir. 2010) (Sykes, J., dissenting). It is an exacting standard, and the government bears the burden of satisfying it.

The Kortes contend that the contraception mandate substantially burdens their exercise of religion by requiring them, on pain of substantial financial penalties, to provide and pay for an employee health plan that includes no-cost-sharing coverage for contraception, sterilization, and related medical services that their Catholic religion teaches are gravely immoral. They further contend that the mandate fails RFRA's strict-scrutiny requirement because the government's interest in making contraception and sterilization accessible on a cost-free basis is not sufficiently strong to qualify as compelling, and that coercing religious objectors to provide this coverage is not the least restrictive means of achieving that objective. They point out that some health plans are either grandfathered or exempt from the mandate, illustrating that the interest served by the mandate is far from compelling. And they argue that the government has other methods of furthering its interest in free access to contraception without imposing this burden on their religious liberty—for example, by offering tax deductions or credits for the purchase of contraception or incentives to pharmaceutical companies or medical providers to offer the services.

In response, the government's primary argument is that because K & L Contractors is a secular, for-profit enterprise, no rights under RFRA are implicated at all. This ignores that Cyril and Jane Korte are also plaintiffs. Together they own nearly 88% of K & L Contractors. It is a family-run business, and they manage the company in accordance with their religious beliefs. This includes the health plan that the company sponsors and funds for the benefit of its nonunion workforce. That the Kortes operate their business in the corporate form is not dispositive of their claim. *See generally Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876 (2010).  The contraception mandate applies to K & L Contractors as an employer of more than 50 employees, and the Kortes would have to violate their religious beliefs to operate their company in compliance with it.

The government also argues that any burden on religious exercise is minimal and attenuated, relying on a recent decision by the Tenth Circuit in *Hobby Lobby Stores, Inc. v. Sebelius,* No. 12-6294 (10th Cir. Dec. 20, 2012). *Hobby Lobby,* like this case, involves a claim for injunctive and declaratory relief against the mandate brought by a secular, for-profit employer. On an interlocutory appeal from the district court's denial of a preliminary injunction, the Tenth Circuit denied an injunction pending appeal, noting that "the particular burden of which plaintiffs complain is that funds, which plaintiffs will contribute

Case 3:12-cv-01072-MJR-PMF   Document 64   Filed 01/02/13   Page 5 of 8   Page ID #580
Case: 12-3841   Document: 15   Filed: 12/28/2012   Pages: 8

No. 12-3841                                                                                                    Page 5

to a group health plan, might, after a series of independent decisions by health care providers and patients covered by [the corporate] plan, subsidize *someone else's* participation in an activity condemned by plaintiff[s'] religion." *Id.* at 7 (quoting *Hobby Lobby Stores, Inc. v. Sebelius,* 870 F. Supp. 2d 1278, 1294 (W.D. Okla. 2012)). With respect, we think this misunderstands the substance of the claim. The religious-liberty violation at issue here inheres in the *coerced coverage* of contraception, abortifacients, sterilization, and related services, *not*—or perhaps more precisely, *not only*—in the later purchase or use of contraception or related services.

We note that the Eighth Circuit apparently disagrees with our colleagues in the Tenth. In a similar lawsuit, the Eighth Circuit granted a motion for an injunction pending appeal, *see O'Brien v. U.S. Dep't of Health & Human Servs.,* No. 12-3357 (8th Cir. Nov. 28, 2012), albeit without discussion. We note as well that on December 26, 2012, Justice Sotomayor, as Circuit Justice for the Tenth Circuit, issued an in-chambers decision in *Hobby Lobby* denying the plaintiffs' motion for an injunction pending appellate review. *Hobby Lobby Stores, Inc. v. Sebelius,* No. 12A644, 2012 WL 6698888 (Sotomayor, Circuit Justice Dec. 26, 2012). But the "demanding standard" for issuance of an extraordinary writ by the Supreme Court, *id.* at *1, differs significantly from the standard applicable to a motion for a stay or injunction pending appeal in this court. As Justice Sotomayor noted, the entitlement to relief must be "'indisputably clear.'" *Id.* (quoting *Lux v. Rodrigues,* 131 S. Ct. 5, 6 (Roberts, Circuit Justice 2010)).[1]

Finally, the government emphasizes the fact that K & L Contractors' current employee health plan covers contraception. But it is well-established that a religious believer does not, by inadvertent nonobservance, forfeit or diminish his free-exercise rights. *See Grayson v. Schuler,* 666 F.3d 450, 454 (7th Cir. 2012) ("a sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance").

In short, the Kortes have established a reasonable likelihood of success on their claim that the contraception mandate imposes a substantial burden on their religious exercise. As such, the burden will be on the government to demonstrate that the contraception mandate is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C.

---

[1] Four district courts have granted preliminary injunctions or temporary restraining orders in similar cases. *Conestoga Wood Specialties Corp. v. Sebelius*, No. 12-6744 (E.D. Pa. Dec. 28, 2012); *Tyndale House Publishers v. Sebelius*, Civil Action No. 12-1635 (RBW), 2012 WL 5817323 (D.D.C. Nov. 16, 2012); *Legatus v. Sebelius*, No. 12-12061, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012); *Newland v. Sebelius,* Civil Action No. 1:12-cv-1123-JLK, 2012 WL 3069154 (D. Colo. July 27, 2012). A second district court in this circuit denied preliminary injunctive relief in a similar case. *See Grote Indus., LLC v. Sebelius*, No. 4:12-cv-00134-SEB-DML (S.D. Ind. Dec. 27, 2012).

Case 3:12-cv-01072-MJR-PMF  Document 64  Filed 01/02/13  Page 6 of 8  Page ID #581
Case: 12-3841   Document: 15   Filed: 12/28/2012   Pages: 8

No. 12-3841									Page 6

§ 2000bb-a(1), (b). Given this high bar, we think the Kortes have established a reasonable likelihood of success on their RFRA claim. At this stage of the proceedings, the government invokes only a generalized interest in "ensuring that employees and their families have access to recommended preventative health services," and somewhat more specifically, "ensur[ing] that decisions about whether to use contraception and which form to use are made by a woman and her doctor—not by her employer or insurer." Whether these interests qualify as "compelling" remains for later in this interlocutory appeal; the government has not advanced an argument that the contraception mandate is the least restrictive means of furthering these interests. Reserving judgment for our plenary consideration of the appeal, we conclude at this early juncture that the Kortes have established a reasonable likelihood of success on their RFRA claim.

They have also established irreparable harm. Without an injunction pending appeal, the Kortes will be forced to choose between violating their religious beliefs by maintaining insurance coverage for contraception and sterilization services contrary to the teachings of their faith and subjecting their company to substantial financial penalties. RFRA protects the same religious liberty protected by the First Amendment, and it does so under a more rigorous standard of judicial scrutiny; the loss of First Amendment rights "for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *Alvarez*, 679 F.3d at 589. In this context "quantification of injury is difficult and damages are therefore not an adequate remedy." *Flower Cab Co. v. Petitte*, 685 F.2d 192, 195 (7th Cir. 1982).

We also conclude that the balance of harms tips strongly in the Kortes's favor. An injunction pending appeal temporarily interferes with the government's goal of increasing cost-free access to contraception and sterilization. That interest, while not insignificant, is outweighed by the harm to the substantial religious-liberty interests on the other side. The cost of error is best minimized by granting an injunction pending appeal.

Accordingly, IT IS ORDERED that the motion for an injunction pending appeal is GRANTED. The defendants are enjoined pending resolution of this appeal from enforcing the contraception mandate against the Kortes and K & L Contractors.

ROVNER, *Circuit Judge*, dissenting.  I would deny the appellants' emergency request for temporary injunctive relief.  I do not believe that the appellants have demonstrated either a reasonable likelihood of success on the merits of their appeal or irreparable harm in the absence of an injunction pending the resolution of the appeal.

Although the Kortes contend that complying with the Patient Protection and Affordable Care Act's insurance mandate violates their religious liberties, they are removed

by multiple steps from the contraceptive services to which they object.  First, it is the corporation rather than the Kortes individually which will pay for the insurance coverage.  The corporate form may not be dispositive of the claims raised in this litigation, but neither is it meaningless:  it does separate the Kortes, in some real measure, from the actions of their company.  Second, the firm itself will not be paying directly for contraceptive services.  Instead, their company will be required to purchase insurance which covers a wide range of health care services.  It will be up to an employee and her physician whether she will avail herself of contraception, and if she does, it will be the insurer, rather than the Kortes, which will be funding those services.  In the usual course of events, an employer is not involved in the delivery of medical care to its employee or even aware (by virtue of physician-patient privilege and statutory privacy protections) of what medical choices the employee is making in consultation with her physician; only the employee, her physician, and the insurer have knowledge of what services are being provided.  What the Kortes wish to do is to preemptively declare that their company need not pay for insurance which covers particular types of medical care to which they object, despite the fact that neither the company nor its owners are involved with the decision to use particular services, nor do they write the checks to pay the providers for those services.  *See Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294, Order at 7 (10th Cir. Dec. 20, 2012) (quoting *Hobby Lobby Stores, Inc. v. Sebelius*, 870 F. Supp. 2d 1278, 1294 (W. D. Okla. 2012) ("[T]he particular burden of which plaintiffs complain is that funds, which plaintiffs will contribute to a group health plan, might, after a series of independent decisions by health care providers and patients covered by [the corporate] plan, subsidize *someone else's* participation in an activity that is condemned by plaintiff[s'] religion.  Such an indirect and attenuated relationship appears unlikely to establish the necessary 'substantial burden.'") (emphasis in original)), *application for injunction denied by Circuit Justice*, 2012 WL 6698888 (U.S. Dec. 26, 2012) (Sotomayor, J.).  If an employer has this right, it is not clear to me what limits there might be on the ability to limit the insurance coverage the employer provides to its employees, for any number of medical services (or decisions to use particular medical services in particular circumstances) might be inconsistent with an employer's  (or its individual owners') individual religious beliefs.  In short, the Kortes have not shown that complying with the insurance mandate substantially burdens the free exercise of their religious rights, in violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1.

I am also dubious of the notion that the Kortes will be irreparably harmed in the absence of a temporary injunction relieving them of the obligation to comply with the mandate to purchase insurance covering contraceptive services.  First, the insurance plan currently in effect for their company's non-union employees, which plan the company voluntarily entered into, already covers the relevant contraceptive services.  The Kortes aver that they were unaware of this fact until shortly before they filed this litigation.  The limited record before us does not reveal how long this has been going on, nor does it tell us what

Case 3:12-cv-01072-MJR-PMF   Document 64   Filed 01/02/13   Page 8 of 8   Page ID #583
             Case: 12-3841     Document: 15          Filed: 12/28/2012     Pages: 8

No. 12-3841                                                                    Page 8

steps, if any, the Kortes took in the past to determine what services would be covered by the insurance their firm acquired for its non-union employees.  I accept that their prior, inadvertent failure to act in compliance with their professed religious beliefs does not necessarily defeat the claims that they are pursuing in this litigation.  *See Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012) ("a sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance").  But the fact that the Kortes' company is already voluntarily (if inadvertently) paying for the type of insurance coverage to which they object – for at least the past year, and possibly longer – suggests that they will not be irreparably harmed by continuing to pay for the same coverage in compliance with the Affordable Care Act while this appeal is being resolved.  Second, the regulations imposing the insurance mandate were issued in August 2011.  As of that time, the Kortes knew that their company would be required to fund insurance coverage that included contraceptive services.  Yet, they waited for more than a year to file this suit and seek a preliminary injunction relieving their firm of the duty to comply with the statute and the implementing regulations.  If the insurance mandate poses as dire of a choice as the Kortes aver that it does (to act in violation of their religious beliefs, or pay a hefty fine for failing to comply with the statutory mandate), then they were obliged to take more prompt action than they did.  Their belated discovery that their firm was already voluntarily providing to its employees coverage for services they claim they cannot countenance, coupled with their tardy decision to file suit seeking injunctive relief relieving their firm from the insurance mandate, suggests that they will not be irreparably harmed if they are denied preliminary relief while the merits of this appeal are being resolved.

      I respectfully dissent.